17 F.3d 396
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Angel Meza AISPURO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge FIGUEROA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Manuel MONTERO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Candelario Beltran MEZA, Defendant-Appellant.
 Nos. 92-50757, 93-50001, 93-50013 and 93-50064.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 5, 1994.*
Decided Feb. 14, 1994.
 
 1
 Before: GOODWIN and HALL, Circuit Judges, and TANNER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Defendants Angel Meza Aispuro, Jorge Garcia Figueroa, Jose Manuel Montero and Candelario Beltran Meza appeal the district court's denial of their combined pretrial motion to suppress evidence obtained pursuant to a telephonic warrant. We affirm.
 
 I. Background
 
 4
 On October 8, 1991, at approximately 8:00 p.m., Los Angeles Police Department (LAPD) Detective Alfonse Kotero set up surveillance at Fontana Motors, a used car dealership located at 16763 Merrill Avenue, Fontana, California. Detective Kotero saw that the dealership appeared to be closed for the night, that a motor home was parked next to a garage door on the premises, and that a piece of plywood was propped between the motor home and the garage, blocking the view of the rear of the motor home and the garage from the street. Detective Kotero later observed a second motor home being allowed entry onto the premises by a thin, dark-haired hispanic male, later identified as defendant Jose Montero. The second motor home was parked alongside the first motor home, and the piece of plywood was repositioned so that the view of the rear of the second motor home was also obscured.
 
 
 5
 At approximately 8:30 p.m., Detective Kotero observed a black Volkswagen GTI arrive at Fontana Motors. Jose Montero opened the gate for the GTI, and proceeded to look "all around the street" before returning to speak with the two males in the GTI. A short time later, Detective Kotero heard noises coming from the rear portion of both motor homes that sounded like "metal and things being moved within the motor homes." By approximately 11:00 p.m., Kotero noticed that one of the motor homes appeared to contain less weight.
 
 
 6
 During the surveillance, Kotero received information from the United States Customs Service that both motor homes had entered the United States from Mexico on October 6, 1991 within 40 minutes of one another. Kotero also learned that each motor home had established a pattern of crossing the border from Mexico into the United States on Sunday evenings, and that each had crossed a total of three times in the last month.
 
 
 7
 Prior to October 8, 1991 LAPD officers were familiar with 16763 Merrill Avenue. On January 4, 1991, officers had followed a narcotics trafficker known as "Flaco" to Fontana Motors after he had assisted in providing an undercover officer with a one kilogram sample of cocaine. Police officers periodically checked the premises for signs of "Flaco," but to no avail.
 
 
 8
 During the early morning of October 9, 1991, Kotero proceeded to a nearby police station to seek a telephonic warrant to search the premises of Fontana Motors as well as the two motor homes. Kotero read the actual search warrant verbatim over the telephone to Los Angeles County Superior Court Judge James Otero. The warrant contained a detailed description of the business premises of Fontana Motors and of the two motor homes located thereon. Kotero, reading from a form, also described the specific items to be seized. The affidavit set forth that among the objects sought were cocaine, narcotics paraphernalia, and various documents allegedly indicating the sale and storage of narcotics.
 
 
 9
 Detective Kotero apprised Judge Otero of his training and experience (11 years with the LAPD, eight of which were spent in the Narcotics Bureau), and knowledge of practices of narcotics traffickers gained from his involvement in over 100 investigations. He told Judge Otero that it was typical for large scale cocaine traffickers to use various locations to store narcotics in order to minimize the risk of discovery, and to transport contraband and money in vehicles equipped with hidden compartments. Kotero also described to Judge Otero the events he had observed that night, as well as the history of the LAPD's surveillance of Fontana Motors.
 
 
 10
 Judge Otero found probable cause for the issuance of a warrant and directed Kotero to enter the Judge's name on the duplicate search warrant in Kotero's possession. Although Kotero did not read it to the Judge, the lower printed portion of the warrant, eventually reviewed and signed by Judge Otero, stated: "[t]he Affidavit in support of this Search Warrant is incorporated herein and was sworn to this 9 day of October, 1991, at 2:44 a.m."
 
 
 11
 During the search of the business premises of Fontana Motors and the two motor homes the officers found approximately 2,298 kilograms of cocaine. Defendants Montero, Figueroa and Aispuro were arrested inside the business. Defendants Beltran and Sanchez were arrested the following morning upon returning to the premises in the black Volkswagen GTI.
 
 II. Particularity of the Warrant
 
 12
 The Fourth Amendment requires that a search warrant "particularly describ[e] the ... things to be seized." U.S. Const. Amend. IV. Aispuro argues that the search warrant lacked particularity because it neither listed the items to be seized, nor was accompanied by the affidavit that described the items to be seized. The government replies that this issue was not presented to the trial court and therefore cannot be raised on appeal.
 
 
 13
 Issues not presented to the trial court cannot generally be raised for the first time on appeal. United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991). Nevertheless, we have recognized a narrow exception where the "issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." Id. (quoting United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990)). Whether a warrant describes the items to be seized with sufficient particularity is reviewed de novo, United States v. Schmidt, 947 F.2d 362, 371 (9th Cir.1991), and therefore the government would suffer little prejudice assuming all the necessary testimony was elicited at the suppression hearing. However, a key fact--whether or not Detective Kotero had the list of items to be seized in his possession during the execution of the search, thereby arguably fulfilling the requirement that an affidavit which corrects a deficient search warrant accompany that warrant during the search--was not developed during the suppression hearing.
 
 
 14
 Notwithstanding this prejudice, the government argues that the record demonstrates that the warrant satisfied the particularity requirement, and in the alternative, that Detective Kotero reasonably relied on the warrant in good faith. Under United States v. Leon, 468 U.S. 897 (1984), evidence need not be suppressed where police officers obtained the evidence through objective good faith reliance on a warrant, issued by a detached and neutral magistrate, which is subsequently determined to be defective. "In the absence of abandonment of the detached and neutral magisterial role, suppression is proper only where the officers were dishonest or reckless in preparing their affidavit, or could not have harbored an objectively reasonable belief in the existence of probable cause due to a facial deficiency in the warrant." United States v. Michaelian, 803 F.2d 1042, 1047 (9th Cir.1986).
 
 
 15
 Aispuro has not challenged the neutrality of the magistrate. The question here is whether the warrant was so facially deficient that Kotero could not reasonably have believed it to be valid. United States v. Leon, 468 U.S. at 923.
 
 
 16
 We hold that Detective Kotero could have reasonably believed the warrant to be valid in view of the following factors. First, at the probable cause hearing, Kotero read through a list of items to be seized, indicating that he was following procedure that he believed necessary to obtain a warrant. Second, the judge did not instruct Kotero that he was required to carry the list with him during the search. Third, in determining whether the good faith exception applies to a particular case, we must weigh the likelihood of deterring future unlawful police misconduct against the costs of withholding reliable information from the truth-seeking process. Illinois v. Krull, 480 U.S. 340 (1987). Here, Kotero clearly attempted to obtain and execute a warrant he believed was procedurally valid.[1]
 
 III. Scope of the Warrant
 
 17
 Aispuro next argues that the police exceeded the scope of the warrant by searching the buildings located on the premises, as the warrant only listed the address--16763 Merrill Avenue--and the license plate numbers of the two mobile homes located thereon. Aispuro claims that Judge Otero logically limited the search to the two mobile homes, as they were the focus of the probable cause hearing. We review de novo whether officers exceeded the scope of a warrant during a search. United States v. Becker, 929 F.2d 442, 446 (9th Cir.), cert. denied, 112 S.Ct. 183 (1991).
 
 
 18
 The authority to search granted by any warrant is limited to the specific places described in it, and does not extend to additional or different places. See, e.g., United States v. Principe, 499 F.2d 1135, 1137 (1st Cir.1974); Keiningham v. United States, 287 F.2d 126, 129 (D.C.Cir.1960). However, search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided. Spinelli v. United States, 393 U.S. 410, 419 (1969); see also United States v. Williams, 687 F.2d 290, 292-293 (9th Cir.1982) ("The necessary specificity of the description is valid if the description is sufficiently definite to enable the executing officer to reasonably ascertain and identify the place to be searched and the objects to be seized.") In Williams, this Court upheld the validity of a search of a cabin even though the warrant authorized a search of the "premises" only, and did not refer specifically to the buildings located thereon. United States v. Williams, 687 F.2d at 293. The court found that it was clear that the magistrate "intended to use the word premises in the warrant to include and authorize a search of the buildings" and
 
 
 19
 [f]urthermore, after marijuana gardens were discovered growing within a short distance of appellant's cabin, the trained officers had sufficient grounds to believe that evidence of marijuana, such as implements used in cultivation, the marijuana seed, or infant plants, would likely be found in the cabin.
 
 
 20
 Id.
 
 
 21
 Similarly, here the facts support a conclusion that Judge Otero was authorizing a search of the business premises of Fontana Motors and not just the motor homes. Detective Kotero described the property located at 16763 Merrill Avenue and its boundaries in great detail during the hearing, yet Judge Otero did not expressly limit the scope of the search to the two motor homes. The evidence presented by Kotero during the telephonic probable cause hearing included the observations that the individuals under surveillance had access to the garage as well as the motor homes, and there was a great deal of movement between the garage and motor homes, supporting an inference that cocaine was being unloaded from the motor homes into the garage area at Fontana Motors.
 
 
 22
 IV. Probable Cause to Search 16763 Merrill Avenue
 
 
 23
 Aispuro also claims that Judge Otero erred in finding probable cause to search the premises of 16763 Merrill Avenue. We must determine whether the magistrate had a "substantial basis" for concluding that the affidavit in support of the warrant established probable cause. United States v. Brown, 951 F.2d 999, 1002 (9th Cir.1991). In view of the testimony of Detective Kotero during the probable cause hearing, we cannot say that Judge Otero's finding was clearly erroneous.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds case No. 92-50757 suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because we hold that Detective Kotero acted in good faith, we do not directly reach the issue of whether the search warrant described the objects to be seized with sufficient particularity